IN RE ESTATE OF NITSCHKE: HENGST, EXR., APPELLEE, *v.* TRANTHAM, GDN., ET AL., APPELLANTS.

508

(No. 6616—Decided October 31, 1961.)

*Messrs. Hengst & Ball,* for appellee.
*Messrs. Power, Griffith & Jones, Mr. William H. Schneider, Mr. John J. Chester* and *Mr. John C. Burkholder,* for appellants.

Duffey, P. J.  This is an appeal on questions of law from an order of the Probate Court of Franklin County.  James M. Hengst, executor of the estate of Grace C. Nitschke, deceased, applied, under Section 2113.37, Revised Code, for authority to expend $3,000 as a payment to the Greenlawn Cemetery Association for a perpetual fund to care for the lot on which the decedent is buried.  Authority was granted.  Appellants are legatees under three specific bequests in the decedent's will.

Section 2113.37, Revised Code, provides:

"The Probate Court in settlement of an executor's or administrator's account may allow as a credit to the executor or administrator a just amount expended by him for a tombstone or monument for the deceased and a just amount paid by him to a cemetery association or corporation as a perpetual fund for caring for and preserving the lot on which the deceased is buried.  It is not incumbent on an executor or administrator to procure a tombstone or monument or to pay any sum into such fund."

The decedent's will left a large number of specific bequests. Items II, III and IV provide:

"*Item* II.  I give and bequeath to the Greenlawn Cemetery Association, five thousand dollars ($5,000) for perpetual care of the Sarah Crawford lot, known as Section 66-257.

"*Item* III. I give and bequeath to the Greenlawn Cemetery Association, two thousand dollars ($2,000) for perpetual care of the Nitschke family lot, Lot 11, Section 49, on which the mother of my husband, Charles F. Nitschke, is buried.

"*Item* IV. I give and bequeath to the Oakwood Cemetery Association, Warren, Ohio, two thousand ($2,000) for perpetual care of the James Crawford lot, on which my father, William H. Crawford, is buried."

Item V is a very substantial specific bequest to a Gladys Griffin of extensive property and cash. Item VI is a specific bequest to a Mary Van Houten of $3,000 cash and personal property. Items VII and VIII are specific bequests to appellants Georgia Nitschke Smith and Clara Nitschke Brush of $15,000 and certain personal property to each. Items IX through XIV are specific bequests of varying substantiality to a number of relatives and friends. Item XV is a specific bequest to appellant James W. Nitschke of certain real estate, $5,000 in cash and certain personalty. Item XVI is a specific bequest in trust for certain relatives of stock in Columbus Properties, Inc., having an appraisal value of $48,000.

Item XVII is a residuary clause which also contains the following provision:

"In the event there are not sufficient assets under this item to pay all debts and expenses of administration and it is necessary to allocate same against specific legacies or devises, I direct that no deduction therefor be made from the specific bequests to Gladys Griffin, Mary S. Van Houten and from the bequest of stock in Columbus Properties, Inc." .

Item XVIII provides:

"In this will I make special provision for James W. Nitschke, Georgia Nitschke Smith and Clara Nitschke Brush to compensate them to some extent for inequalities in distributions made by their uncle, James W. Nitschke and their aunt, Clara S. Nitschke during their lifetime or in their respective wills. I am especially indebted to James W. Nitschke, devisee herein, because of his having resided with me nine years after the death of my husband during which period and since he has been of great help and comfort."

The gross estate was appraised at $200,769.21. However, the net estate available for distribution was insufficient to pay

all of these specific bequests in full (and obviously, therefore, there is no residuary). In the absence of a provision in the will, the specific bequests would abate proportionately, but under Item XVII the three cemetery bequests (Items II, III and IV) and the appellant's three bequests (Items VII, VIII and XV) all fall in the same category, *i. e.*, they are to be abated prior to those named in Item XVII. Following these instructions, the executor made a tentative abatement of these specific cash bequests by paying only 40 per cent. In amounts, this was: (1) Greenlawn Cemetery (Item II) $2,000; (2) Greenlawn Cemetery (Item III) $800; (3) Oakwood Cemetery (Item IV) $800; (4) Georgia N. Smith (Item VII) $6,000; (5) Clara N. Brush (Item VIII) $6,000; (6) James W. Nitschke (Item XV) $2,000.

It now appears that the amount left in the estate to pay the remaining 60 per cent ($26,400) of these specific bequests is only $4,352.43. The $3,000 allowed by the Probate Court for cemetery lot care would be paid out of that fund and, therefore, operate to enhance the abatement by reducing the already grossly inadequate amount available.

An expenditure under Section 2113.37, Revised Code, is an entirely permissive matter rather than in any sense a necessary administrative expense. It is, therefore, a matter in the sound discretion of the court, and subject to review if that discretion is abused. The statute permits the expenditure of a ''just amount,'' and is limited to the lot on which the decedent is buried.

Grace Nitschke, in life, purchased a burial lot, apparently containing space for four graves. Both the decedent and her husband are buried there. The lot carries with it an obligation of the cemetery association to provide minimum care in the form of cutting the grass and general maintenance. The hearing on the application indicates that while alive the decedent had a considerable interest in the care and maintenance of the grave of her husband and other relatives, frequently visiting the cemetery and personally seeing to some of the maintenance.

In determining if there has been an abuse of discretion, consideration should be given to all the circumstances. Assuming that the allowed payment would be taken as a satisfaction of the bequest of Item II, the total endowment of Greenlawn

for the care of decedent's lot alone, in addition to minimal care, would amount to $5,000 out of an estate of over $200,000. Viewed in that light alone, the amount does not seem excessive. Bearing in mind the decedent's interest in the care of cemetery lots, evidenced by the testimony of her habits, and by the three bequests to cemetery associations, the order appears reasonable.

However, there are other circumstances that must be taken into account.

1. It is apparent that the executor could not provide this additional amount to Greenlawn under the terms of the will. To do so would create an illegal preference not permitted by the terms of the will or by law.

2. The payment operates to reduce *specific* bequests already substantially abated, rather than to reduce the general estate.

3. Among the specific bequests so injured are two bequests for cemetery lot care. The testimony on decedent's habits was not limited to the specific lot in question, but showed a general interest and concern with the burial lots of her family. The will provisions reinforce this.

4. The decedent went to considerable lengths in Item XVII to express her special concern and feeling of obligation toward the three individual legatees injured by the allowance of this expenditure.

The referee noted that Item II is placed ahead of the other bequests and inferred some special intent from its placement. We cannot discern any significance in its placement unless it be the opposite. The decedent made a special provision for determining abatement and placed all six bequests in the same relative position. If one is to look at the will, Item XVII would also seem to evidence an intent to prefer the three individuals over the three cemetery bequests. But, of course, as a matter of law, that cannot be done here. The comment of the referee would appear to indicate that he took into account that which he could not do under the will and law, i. e., the creation of a preference as opposed to determining a "just amount." It is interesting to note that the court entry recites that the payment is to "complete the endowment" of Greenlawn.

Finally, the decedent's lot will receive minimal care, plus an endowment for special care of $2,000 already paid by the

executor, and will be entitled to receive an additional amount for endowment proportionate to the other bequests. Under the peculiar circumstances here, the ultilization of the statutory provision amounts to an evasion of the abatement provision of the will and is counter to the expressed intent of the testator as indicated by the detailed structure she established for the distribution of her estate.

The order of the Probate Court is reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

DUFFY, J., concurs.

BRYANT, J., dissenting. This is an appeal on questions of law from a judgment of the Probate Court of Franklin County. James M. Hengst, executor of the estate of Grace C. Nitschke, deceased, filed in that court an application to endow a cemetery lot, which application reads as follows:

"Now comes James M. Hengst, executor herein, and make application for leave to disburse as an administration expense, $3,000 of $4,852.43 available for final distribution. This request is based upon the following statement of facts:

"In her lifetime testatrix evinced great care and consideration for the maintenance of burial plots of her own families and that of her husband's family. In her will testatrix bequeath $5,000 to Greenlawn Cemtery Association for perpetual care of the Sarah Crawford lot upon which testatrix is buried, $2,000 for perpetual care of the burial plot of her husband's family and $2,000 to the Oakwood Cemtery Association, Warren, Ohio, for perpetual care of the burial plot of her parents.

"In addition to the foregoing, testatrix made cash bequests as follows: Georgia Nitschke Smith, $15,000, Clara Nitschke Brush, $15,000 and James W. Nitschke, $5,000.

"By reason of insufficient cash in the administration of this estate from assets not specifically bequeathed or devised, your executor, in his first and partial distributive account herein, paid 40% of the foregoing cash bequests, including $2,000 to Greenlawn Cemetery Association of the bequest for perpetual care of the plot where testatrix and her husband are buried. $3,000 thereof is accordingly unpaid.

"In the discretion of this court, perpetual care of the plot

where testatrix is buried may be allowed as an expense of administration.

"The following legatees are interested in this application: Greenlawn Cemetery Association, Columbus, Ohio; Oakwood Cemetery Association, Warren, Ohio; Georgia Nitschke Smith, 2009 Upper Chelsea, Columbus, Ohio; Clara Nitschke. Brush, 2099 Guilford Road, Columbus, Ohio; James W. Nitschke, an Incompetent, 1370 Cambridge Blvd., Columbus, Ohio; Homer Trantham, Guardian of James W. Nitschke, 17 South High Street, Columbus, Ohio.

"Authority is requested in the premises."

The last will and testament of Grace C. Nitschke which was filed in the Probate Court on October 3, 1957, provides in part as follows:

"I, Grace C. Nitschke, of the city of Columbus, county of Franklin, state of Ohio, do make and publish this my last will and testament.

"*Item I.* My will is that all my just debts and funeral expenses be paid out of my estate as soon after my decease as may be found convenient. I direct that all inheritance and estate taxes be paid out of the residuum of my estate so that each beneficiary receive his legacy or devise free from such taxes.

"*Item II.* I give and bequeath to the Greenlawn Cemetery Association, five thousand dollars ($5,000) for perpetual care of the Sarah Crawford lot, known as Section 66-257.

"*Item III.* I give and bequeath to the Greenlawn Cemetery Association, two thousand dollars ($2,000) for perpetual care of the Nitschke family lot, Lot 11, Section 49, on which the mother of my husband, Charles F. Nitschke, is buried.

"*Item IV.* I give and bequeath to the Oakwood Cemetery Association, Warren, Ohio, two thousand ($2,000) for perpetual care of the James Crawford lot, on which my father, William H. Crawford, is buried.

"*  *  *

"*Item VII.* I give and bequeath to Georgia Nitschke Smith fifteen thousand dollars ($15,000) in cash, silver bowl given me by my husband, sandwich plate given me by Lillian and Fred Nitschke as a wedding present, diamond and emerald ring, three strings real pearls, antique gold bracelets, topaz and ivory locket and gold and pearl pin.

"*Item VIII.* I give and bequeath to Clara Nitschke Brush fifteen thousand dollars ($15,000) in cash, diamond and platinum pin, rose quartz beads, silver filigree vase, gold lined with handles at each end, chalice cup, and one-half of green and white hand-painted luncheon set shared with Elizabeth Nitschke.
"'* * *

"*Item XV.*
"'* * * I also give and bequeath to James W. Nitschke five thousand dollars ($5,000) in cash and the diamond ring formerly the property of my husband with the request that it pass to Charles A. Nitschke eventually.
"'* * *

"*Item XVII.* All the rest, residue and remainder of my estate, real or personal, of every kind and description wheresoever situate, which I may own or have the right to dispose of at the time of my decease, I give, devise and bequeath to John Frederick Nitschke, Andrew C. Nitschke, James W. Nitschke, Clara Nitschke Brush and Georgia Nitschke Smith, to be theirs absolutely and in fee simple. If any do not survive me, I give, devise and bequeath their shares to their respective wives or husbands. In the event there are not sufficient assets under this item to pay all debts and expenses of administration and it is necessary to allocate same against specific legacies or devises, I direct that no deduction therefor be made from the specific bequests to Gladys Griffin, Mary S. Van Houten and from the bequest of stock in Columbus Properties, Inc.

"*Item XVIII.* In this will I make special provision for James W. Nitschke, Georgia Nitschke Smith and Clara Nitschke Brush to compensate them to some extent for inequalities in distributions made by their uncle, James W. Nitschke and their aunt, Clara S. Nitschke during their lifetime or in their respective wills. I am especially indebted to James W. Nitschke, devisee herein, because of his having resided with me nine years after the death of my husband during which period and since he has been of great help and comfort."

In the first and partial distributive account filed by the executor, it was reported that 40 percent of the total amount specified in the will had been paid to cash legatees, including the following: Greenlawn Cemetery Association, care of Sarah Crawford lot, $2,000 (Item II); Greenlawn Cemtery Associa-

tion, care of Nitschke Family Lot, $800 (Item III); Oakwood Cemetery Association, care of James Crawford Lot, $800 (Item IV); Georgia N. Smith, $6,000 (Item VII); Clara Nitschke Brush, $6,000 (Item VIII), and James W. Nitschke, through his guardian, Homer Trantham, $2,000 (Item XV).

The application filed by the executor was opposed by counsel for three individual cash legatees, a hearing was held and the matter was submitted to the general referee upon the evidence, briefs and memoranda submitted by the executor and counsel for the legatees. It was pointed out by the executor in a letter dated November 16, 1959, addressed to the general referee that the $3,000 proposed to be paid to the cemetery association "is not out of line since the estate involved $200,769.21 and not merely $4,352.43 on hand at the present time. We are not dealing with an insolvent estate."

The general referee held that the additional $3,000 sought to be paid pursuant to the application of the executor, which in effect would complete the payment called for under Item II of the will, should be allowed as an expense of administration by the fiduciary pursuant to the provisions of Section 2113.37 of the Revised Code, which reads as follows:

"The Probate Court in settlement of an executor's or administrator's account may allow as a credit to the executor or administrator a just amount expended by him for a tombstone or monument for the deceased and a just amount paid by him to a cemetery association or corporation as a perpetual fund for caring for and preserving the lot on which the deceased is buried. It is not incumbent on an executor or administrator to procure a tombstone or monument or to pay any sum into such fund."

In the report of the general referee, reference was made to the specific cash bequests to the Greenlawn Cemetery Association under Items II and III of the will, to the Oakwood Cemetery Association under Item IV, to Grace Nitschke Smith under Item VII, to Clara Nitschke Smith under Item VIII and to James W. Nitschke II under Item XV, after which the general referee said:

"By reason of insufficient cash realized in the administration of the estate from assets not specifically bequeathed or devised, the executor paid forty per cent, of the foregoing cash

bequests, as shown by his first and partial distributive account filed herein, including $2,000 to the Greenlawn Cemetery Association for the bequest for perpetual care of a plot where testatrix and her husband are buried. This is the plot referred to in item II of the will; $3,000 thereof remains unpaid, and there is left in the hands of the executor $4,851.93 with which to satisfy partially the unpaid balances on the listed bequests.

"The executor has requested that he be permitted to pay the balance of the five thousand dollar bequest to Greenlawn Cemetery for perpetual care of the plot where the testatrix is buried, and that it be allowed as 'an expense of administration.' "

The general referee's report concludes as follows:

"Examining the question with reference to the successors of the estate, your referee has computed the loss to each of the beneficiaries who would be affected thereby. The bequest to Georgia Smith will be reduced by $1,155, the bequest to Clara Brush by $1,155, the bequest to James Nitschke by $385, and the two additional bequests to Greenlawn Cemetery, $154 each.

"It has been argued by counsel representing the individual legatees that the payment of this bequest in full would give preferential treatment to one legatee. However, an examination of the will indicates that the bequest in question was the first item following the payment of debts and funeral expenses. This would indicate to your referee that the care of this cemetery lot was foremost in the decedent's mind at the time of drawing the will, and as such would probably indicate a preference by the decedent herself.

"Considering all the facts presented, and by no means intending to establish a precedent as to the disposition of cases of this type, your referee, feeling that each case must stand on its own merits, is of the opinion that the additional $3,000 should be allowed as an expenditure by the fiduciary under Section 2113.37."

The matter was submitted to the Probate Court, which by journal entry confirmed the report of the general referee and authorized the executor "to pay to the Greenlawn Cemetery Association three thousand dollars ($3,000) as an administration expense to complete the endowment thereof and take credit accordingly in his accounting herein."

Notice of appeal was filed and the assignment of errors of the appellants is as follows:

"I. The Probate Court erred in sustaining the referee's ruling permitting the executor to disburse $3,000 to the Greenlawn Cemetery as an administration expense.

"A. A cemetery may be treated as a preferential legatee only to the extent that the preferential amount is necessary to care for and preserve the lot on which the deceased is buried.

"B. The $3,000 expenditure to the Greenlawn Cemetery is not reasonably necessary to care for and preserve the lot on which Grace C. Nitschke is buried."

It was established in the testimony that the title to the Sarah Crawford lot, known as Section 66-257, mentioned in Item II of the will, had been obtained by the decedent prior to her death. It was further contended that some maintenance was automatically provided by the Greenlawn Cemetery Association to all lot owners without any additional payment by them, and hence the additional payment of $3,000 (in addition to the initial payment of $2,000) proposed to be made by the executor and authorized by the court was neither a necessary nor a proper expense.

As previously pointed out herein, the several cash legatees had already been paid 40 percent of the amount specified in the will. In the case of Item II, *supra*, $2,000 of the $5,000 was paid along with the other 40 percent payments.

It was claimed on behalf of appellants that the payment of the $3,000 for perpetual care, even though authorized as a necessary administration expense, did in fact pay in full the cash legacy provided in Item II, while the other five cash legatees would receive only 40 percent, the effect being to give an unauthorized preference to the Greenlawn Cemetery Association.

It was asserted by the executor that while in many cases, even including some cemetery associations or corporations, where there is insufficient cash to pay all cash bequests, the reduction must be borne equally by all legatees but that an exception to this rule exists in the case of sums paid to those in charge of a cemetery for its perpetual care fund when the payment is for the benefit of the lot on which the deceased is buried. This is as a result of the express provisions of Section 2113.37, Revised Code, *supra*.

It was also contended in the brief of appellee that the determination of the amount which may be paid by a fiduciary in such cases lies in the sound discretion of the Probate Court and that a reviewing court is without power on an appeal on questions of law either to determine the reasonableness or unreasonableness of the amount fixed by the Probate Court in the absence of the finding by the Appellate Court that the Probate Court was guilty of an abuse of discretion.

An examination of the provisions of Section 2113.37, *supra*, discloses that while that section grants authority to a fiduciary to expend funds *"as a perpetual fund for caring for and preserving the lot on which the deceased is buried,"* thus expressly authorizing such expenditures, the statute does not attempt either to fix the amount which shall be paid or to place a limit thereon except that the expenditure must be "a just amount."

As hereinabove pointed out, the executor contended that the expenditure sought was not excessive in view of the total value of the estate being $200,769.21.

In the first instance, the Probate Court was required to exercise its discretion in determining whether or not the amount applied for was or was not "a just amount," the statute not having fixed a specific limit on such expenditures. Where discretion is vested in the court from which the appeal is taken, the Appellate Court lacks the power to control that discretion or to substitute its own judgment as to what "a just amount" is. It is only when the court below has exercised that discretion in a manner amounting to an abuse thereof that the Appellate Court may set aside a determination of the court below.

Is there an abuse of discretion by the Probate Court in this case? I do not think so. The general referee in the Probate Court attached significance to the fact that the provision for the care of the Sarah Crawford lot was the second item in the will and immediately followed provision for the payment of debts and funeral expenses.

The general referee found in this fact an indication of the importance attached by the testatrix to the care of the burial plot.

One of the witnesses, Georgia Nitschke Smith; opposing the application made by the executor, testified that for many years the testatrix "went to the cemetery every day or so," taking

care of the sowing of grass seed, the watering of the grass and the cutting of the grass personally.

As I see it, the order of the court below gives effect to the clearly expressed wishes of the testatrix, is expressly authorized by the provisions of Section 2113.37, *supra*, and in the opinion of the writer does not constitute an abuse of discretion.

From what has been said above, it is the opinion of the writer that the errors assigned on behalf of the appellants are not well taken and should be overruled, the judgment of the court below should be affirmed, and the cause remanded for further proceedings in accordance with law.